CHARLES E. FURLONG ET AL. *v.* THE STATE.

1. BOND. *Of officer. What a breach thereof.*
  No action can be maintained on an official bond for any misfeasance of the officer which is not included within the terms of the condition of the bond, or in the contemplation of the law requiring the bond.

2. SAME. *Of sheriff. Action for money received. Official or individual act.*
  The bond of F., a sheriff, executed under the Code of 1857, was conditioned, substantially according to law, for the faithful performance of the duties of his office as required by law, and that he should pay over all moneys coming into his hands by virtue of his office, to the party entitled thereto. Art. 131, p. 126, Code of 1857, and sect. 237 of the Code of 1871, after prescribing the manner in which the sheriff shall supply the needs of the prisoners in the county jail, provides that he "shall make out his account, under oath, for the expense of keeping and maintaining any prisoner, not exceeding the amount allowed by law, which shall be examined by the district attorney, and allowed by him in writing, specifying the amount for which it is allowed, and shall be allowed by the Circuit Court of the proper county, by an order on the minutes; and on production of said account and certified copy of said order, under the seal of the court, the auditor of public accounts shall issue his warrant on the treasurer of the State for the amount thereof." An action

was brought in behalf of the State against F. and his sureties, to recover on his bond for certain moneys which it was declared he had obtained upon false claims, preferred under the statutory provision above quoted. *Held*, that the presentation of such accounts by F. was an individual, and not an official act; the exercise of a right given, not the performance of a duty imposed by the statute, and was neither within the condition of the bond nor the contemplation of the law requiring the bond. Therefore the action is not maintainable.

3. LIMITATION OF ACTIONS. *Official bonds. Act of 1873.*
    The act of limitation of the 19th of April, 1873, which provided that "all actions upon any bond, obligation, or contract under seal shall be commenced within seven years," etc., applied to official bonds as well as to other sealed instruments.

4. SAME. *Act of 1873 as to sealed instruments. Effect thereof.*
    The act of the 19th of April, 1873, in relation to sealed instruments, when approved, became a part of the Statute of Limitations contained in the Code of 1871; and the time limited in the act for bringing actions on such instruments commenced to run against preëxisting causes of action from the date of its passage, and, by virtue of sect. 2619 of the Code, operated against the State.

APPEAL from the Circuit Court of Warren County.

Hon. U. M. YOUNG, Judge.

Charles E. Furlong, having been appointed by the governor to the office of sheriff of Warren County, gave his official bond, dated the 31st of January, 1871, with J. A. Klein, George M. Klein, Harper P. Hunt, and Alexander Kuhn, as his sureties. The bond was conditioned that Furlong "shall faithfully perform the duties of said office of sheriff of said county, and shall punctually pay over all moneys coming into his hands by virtue of said office, to the party or parties entitled thereto according to law."

On the twenty-ninth day of November, 1880, an action was brought in behalf of the State against Furlong and his sureties on his bond as sheriff, to recover for moneys which it was declared he had obtained from the State between the 31st of January, 1871, and a blank date in 1872, on false claims, preferred under art. 131, p. 126, of the Code of 1857, and sect. 237 of the Code of 1871, the same provision being in both Codes. That statute required every sheriff to feed and otherwise care for the prisoners in the county jail of his county, and then provided that "the sheriff shall make out his ac-

count, under oath, for the expense of keeping and maintaining any prisoner, not exceeding the amount allowed by law, which shall be examined by the district attorney, and allowed by him in writing, specifying the amount for which it is allowed, and shall be allowed by the Circuit Court of the proper county, by an order entered on the minutes ; and on production of said account and a certified copy of said order, under the seal of the court, the auditor of public accounts shall issue his warrant on the treasurer of the State for the amount thereof.''

The defendants demurred to the declaration, on the ground, substantially, that the moneys received by Furlong, as set forth in the declaration, were payments made to him for his own use, and not as public moneys, or moneys to be paid over to other persons, and that the moneys which thus came into his hands were not received by virtue of his office. The demurrer was overruled, and the defendants were allowed to plead. They pleaded the statute of limitations of seven years. A demurrer in behalf of the plaintiff was filed to the defendants' plea, on the grounds, (1) that there is no statute of limitation against an official bond ; (2) that there is no statute of limitation which runs against the State in a suit on any sealed instrument ; and (3) that the act of limitation of the 19th of April, 1873, did not affect preëxisting causes of action. The demurrer to the defendants' plea was sustained. Thereupon the defendants appealed to this court.

*A. B. Pittman*, for the appellants.

The demurrer to the declaration should have been sustained. There is but a single issue which we need discuss, and that is the meaning of the words " by virtue of said office," as used in the bond and in the law. The issue is, whether or not money which the law provided should be paid to the sheriff to compensate and reimburse him is money which he and his sureties covenanted should be paid " over to the party or parties entitled thereto according to law." If the amount due on these accounts was by law payable to the sheriff for his own use, com-

pensation, and indemnity, how useless, idle, and absurd is the requirement that he shall give a bond, with sureties, that he will pay it over to some one else. The fallacy lies in the application of the words " by virtue of said office."

The words in question, sometimes expressed in Latin, in legal discussions, as " *virtute officii,*" whenever used in relation to the receipt of money, always refer to moneys received as a custodian, agent, or fiduciary, who is to hold the money for the benefit of another than himself, and pay it over, disburse it, or otherwise dispose of it, according to the nature and functions of the office. Those officers whose duties require them to receive and handle money *virtute officii* are usually required to give bond and security, to prevent waste or embezzlement of the money intrusted to their charge. The sureties undertake that their principal will safely keep and pay over all such moneys. It embraces all money confided to their keeping by the law.

Now, the argument made for plaintiff to prove that this money was received *virtute officii* will prove equally well that every salary of every officer in the State is money paid to him *virtute officii*. We may ask as to them, as was asked in this case, " would they receive these moneys if they were not such officers? Would this money (their salaries) have been paid to them if they had not been such officers? Would their receipts have been taken and accepted otherwise?" Certainly not. Yet no one would say that these salaries are received by virtue of office, in the same sense in which the words are used in the official bonds of those officers who receive and disburse public moneys.

It would be a useless consumption of time to enter into a critical examination of the numerous cases which have been cited. Carefully analyzed, the court will find them illustrating and sustaining, instead of militating against our case.

In every case in which the failure to pay over money is the *gravamen* of the action, it will be found that the money was public money, or money which came to his hands as custodian,

or in some capacity, and under such laws or contracts as required the payment of it to the use of another.

In Brandt on Suretyship (p. 588, sect. 451) the following language is used : " The sureties on an official bond are, as a general rule, only liable for such sums of money as their principal may receive by virtue of his office. Thus, the sureties on the bond of a town supervisor, containing the condition that he will account for all moneys belonging to the town coming into his hands as such supervisor, are only liable for money which their principal is authorized and bound by law to receive in his official capacity as disbursing agent of the town, and not for that of which he becomes the voluntary custodian, or which is ordered by the board of supervisors, without authority of law, to be paid to him. The condition of the bond must be construed and the liabilities of the sureties limited in reference to the statutes making the supervisor a custodian of public moneys. These statutes make a part of the contract of the surety. Liabilities of sureties are *strictissimi juris*, and cannot be extended by construction or enlarged by the acts of others." *The People* v. *Pennock*, 60 N. Y. 421. See also *Saltenberry* v. *Loucks*, 8 La. An. 95 ; *The State* v. *White*, 10 Rich. L. 442 ; *Nolley* v. *Callaway County Court*, 11 Mo. 447 ; *Smith* v. *Staples*, 53 Ga. 300 ; *The Commonwealth* v. *Swope*, 45 Pa. St. 535. In the last case it was held that a sheriff's sureties were not liable for his failure to pay publishers for publishing notices of sales, etc., though the law made it his official duty to make the publications. The court say : " It does not follow because the duty to advertise is official, the duty to pay is also official."

It seems strange that such a contention would have been made, yet it is repeated in this case. Plaintiff's counsel insist that, as feeding the prisoners is an official duty, receiving pay therefor must be also official.

In the case of *Brown* v. *Mosely et al.*, 11 Smed. & M. 356, the defendant in an execution paid to the sheriff the amount to be collected thereon, in "Alabama money," at fifteen per

.cent discount. The plaintiff in execution refused to accept it, and enforced payment in good money. The defendant in execution, having been required to pay in lawful money, demanded the "Alabama money" from the sheriff, and on failure of the latter to pay, sued on his official bond.

In sustaining a demurrer to the declaration, the Supreme Court used the following language: "To determine this, it will be necessary to look to the extent of their obligation contained in the bond. The condition, after providing for the collection and payment of all fines and forfeitures and amercements due to the State, or to any county, further recites: ' and shall also well and truly execute and due returns make of all process and precepts to him lawfully directed, and pay and satisfy all sums of money by him received by virtue of any such process or precept, to the person or persons to whom the same are due, then,' etc. The money collected under and by virtue of an execution is due to the plaintiff in the execution. It would involve an absurdity to say that money collected of a defendant in execution belongs to such defendant; and yet we should be driven to this extremity if we were to sustain this action. The plaintiff here does not come within the condition of the bond, or in the contemplation of the law which provides an official bond for those whose rights are committed to the hands of the sheriff."

Certainly, the receipt of the money in the case just quoted came more nearly being moneys which came *virtute officii* to the hands of the sheriff than in this case. The money was paid to him on a writ in his hands as sheriff. If the plaintiff in execution had ratified the act of the sheriff, then the sureties, at the suit of the plaintiff, could have been held bound. The failure to pay the money back to the defendant was a fraud, a gross wrong, and in all respects as reprehensible as to withhold the same money from the plaintiff. But, in the language of the court, the bond is provided for those whose rights are committed to the hands of the sheriff.

It is worthy of note that the plaintiff in this case seeks to

involve the court in the identical "absurdity" which the Supreme Court rejected in the case just quoted — the absurdity of saying that the money collected from the State belongs to the State.

*A. B. Pittman* also made an oral argument.

*Murray F. Smith*, on the same side.

The court below erred in sustaining the demurrer to the plea of the Statute of Limitations.

The Code of 1857 (p. 400, art. 6) contained this limitation : "All actions of debt or covenant founded upon any bond, obligation, or contract under seal, or upon the award of arbitrators, shall be commenced within seven years next after the cause of action accrued, and not after."

The codifiers of 1871, either purposely or negligently, omitted this section from the Code of 1871, and in 1873 the Legislature passed an act entitled "An act to amend the Statute of Limitations." Acts 1873, p. 42. This act is word for word the act of 1857, art. 6, p. 400. But it is contended for the appellee that this act is not applicable, for the reason that the State is not specifically mentioned in the act of 1873 ; because it is not one of the limitations mentioned in chap. 45, art. 2, of the Code of 1871, and is not one of the limitations therein or herein prescribed by the Code of 1871, and therefore does not come within sect. 2169 of the Code of 1871 ; and because the cause of action had accrued prior to the passage of the act of 1873.

All of these propositions are based upon the idea that the act of 1873 did not become, from its passage and approval, a part of chap. 45 of the Code of 1871, and therefore subject to the provisions of sects. 2169 and 2172 of the Code of 1871. Aside from the fact that the act of 1873 is an exact copy of art. 6, p. 400, of the Code of 1857, and that chap. 45 of the Code of 1871 is an exact copy of chap. 57 of the Code of 1857, which raises the plain presumption that the act of 1873 was intended to supply the omission in the Code of 1871, the title to the act of 1873 shows plainly that the intention of the

Legislature was to make it a part of chap. 45 of the Code of 1871. It is entitled " An act to amend the Statute of Limitations."

No other statute of limitations was in force at the time of the passage of the act of 1873, and there was, therefore, no other act to amend. While it is true that the title to an act is no part of the law itself, it may be referred to, in cases of doubt, to ascertain the intention of the Legislature. 5 Cal. 195. See especially s. c., bottom of p. 209 ; 53 Pa. St. 71.

*Murray F. Smith* also argued the case orally.

*Cowan & McCabe*, for the appellee.

1. We contend that the moneys collected by the sheriff on his accounts for maintaining prisoners, etc., were obtained by him " by virtue of his office," and were paid to him in his character as sheriff of Warren County. It is true that the procurement of the money for this purpose was not a duty imposed upon him by law, but only an authority or a permission granted ; but, we submit, that whenever he undertook to exercise that authority and avail himself of the permission thus granted, for his own benefit, then it became a duty imposed upon him by law to make out a correct account and collect only the amount allowed by law. The act of making out his account as sheriff for keeping and maintaining prisoners, the act of presenting the same and procuring the approval of the district attorney, the act of obtaining the allowance by the judge, the presentation of the account, the collection of the money upon it and receipting for it, were all acts incident to his office. He could not have successfully done any one of the above-mentioned things except in his official capacity — in his character as sheriff. No attention would have been paid to his account, his oath, or his claim, but for the fact that he was authorized by law, as sheriff of Warren County, to make out such accounts for such purposes, and required by law, when made out, to make oath to them before their allowance or payment. Had he been any other than sheriff, or an officer clothed with sheriff's power and sheriff's character, his oath would

have availed nothing; had he been any other, the district attorney should not have approved it, the clerk should not have certified it to the auditor, and the auditor should certainly have refused its payment. The fact that he was sheriff, or clothed with sheriff's authority and character, and that alone, enabled him to obtain the money. The authority to collect money from the State for maintaining prisoners in the county jail was given by law. "Official acts are those which are done by virtue of the office; such as, if properly done, exculpate both the officer and his sureties from responsibility, but which, if neglected or improperly done, render both liable. If the authority is exceeded, or duty omitted, an action may be maintained against the officer in his official capacity, and his sureties held responsible." Brandt on Surety. 626. We say that an officer who receives fees, commissions, or salary from the public treasury does it *virtute officii*, and if he exceeds the authority given him by law, and collects more than he is entitled to, he is liable to the State or county from which he receives it, and liable in his official capacity. "Wherever the officer is bound, the sureties are also bound." *Seaver* v. *Young*, 16 Vt. 658; *Mahaska County* v. *Ruan*, 45 Iowa, 328; *The People* v. *Treadway*, 17 Mich, 480; *Snell* v. *The State*, 43 Ind. 360. The Code of 1857 expressly recognizes the collection of fees by the officers of the State and counties to be done by virtue of office. Art. 1, p. 142. It is in every instance the officer who is to collect the fees, not the individual. Furlong had no standing with the district attorney, judge, or auditor, for the purpose of collecting these fees, as an individual. One of his deputies, however, could have collected the same money on the same showing, provided he had done it in his official character.

2. The words "bond" and "obligation under seal," mentioned in the limitation act of 1873, do not necessarily include "official bonds." The latter are *sui generis*, and can only be classified as such. The Legislature of this State have heretofore recognized this difference in the classification of bonds in

statutes of limitations. How. & Hutch. Code, p. 569, sect. 95 ; p. 570, sect. 97 ; Hutch. Code, p. 830, sect. 7 ; p. 831, sect. 9. We submit that the failure to mention *official* bonds in the act of 1873 (the act relied on by appellants) is fatal to their plea, for the reason that when a statute of limitations undertakes to enumerate the classes of cases which are to be affected by it, " the courts will not by judicial construction extend the provisions of the Statute of Limitations so as to include within the statutory bar actions not enumerated in it." *Burrus* v. *Wilkinson*, 2 Geo. 537. The act of April 19, 1873, does not apply to actions brought by the State. It is settled law all over the country, by the courts of the different States and the Supreme Court of the United States, that the maxim, *Nullum tempus occurrit reipublicœ*, applies to all statutes of limitation unless the State or government is particularly named in the statute, or plainly and necessarily included in its terms. It is useless to cite authorities on this proposition. The learned counsel for appellants, admitting this, say that the act of 1873 is an amendment to chap. 45 of the Code of 1871 ; that all laws *in pari materia* should be construed with reference to each other, and that therefore all of the provisions of that chap. 45 are applicable to the act of April, 1873 ; and that because sect. 2169, in chap. 45, says that " the limitations *herein pre-scribed* for the commencement of actions shall apply to the same actions when brought in the name of the State," etc., it follows that the act of 1873 also applies to actions brought by the State. Now, we deny that the act of 1873 is an amendment to chap. 45 of the Code of 1871. There is nothing about it to show that it is an amendment to any act, except the title, which is no part of the act itself, and can cut no figure in its construction by the court ; but even the title does not purport to be an amendment to the Code, chap. 45, or any part of it. The act of 1873 does not apply to, or affect causes where the right of action accrued before its passage. The rule of construction is, that statutes must not be construed to

be retroactive or retrospective if they can bear a prospective construction, or unless it clearly appears from the statute itself that it was intended to operate on existing causes of action. The act of 1873 took effect from the date of its passage. Effect on what? Certainly not on causes of action which existed prior to the date of its passage; because such a construction of it would violate the settled law of the State at that time. See *Boyd* v. *Barrenger*, 23 Miss. 270; 24 Miss. 377; 20 Curt. in 15 How. (U. S.) 421. The rule is that all legislation looks to the future, especially disabling acts, — such as acts of limitation, — unless the terms employed in the act itself clearly show a retrospective or retroactive operation. See definition of "Retrospective," Bouv. L. Dic., and cases there cited; "Retroactive," Webster's Unabr. Dic.; Cooley's Const. Lim. 370, and note 1; *Harrison* v. *Metz*, 17 Mich. 377. "We cannot give the provisions of a statute a retrospective force without express words to that effect." *Anding* v. *Levy*, 57 Miss. 58. If the rule that statutes of limitation *in pari materia* must be construed together, had prevailed over the other rule, that statutes of limitation do not operate at any time on preëxisting causes of action, then the United States Supreme Court has made an unpardonable blunder in the case of *Murray* v. *Gibson*, 15 How. (U. S.) 421.

*Warren Cowan* and *H. C. McCabe*, counsel for the appellee, also argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

The demurrer to the declaration presents the question whether the bond of the sheriff is a security to the State against a false claim made by the sheriff for keeping and maintaining prisoners in the jail of the county, by means of which he obtained an allowance for and collected more than he was legally entitled to. The demurrer rests for its support on the proposition that the bond is not an indemnity against such a result, and that the sheriff alone is liable for money thus improperly obtained. The argument is that the

bond is intended as an indemnity against official misconduct, and to secure the payment of money received officially by the sheriff and required by law to be paid over by him ; and that in preferring his claim for pay for keeping prisoners he is not acting officially, and in receiving money on this account he is not to pay it to another, but receives it for himself.

It is certainly true that there is a limit to the liability of the sureties on an official bond. They are not liable beyond the condition of the bond and the contemplation of the law which requires it to be given. It is intended as an indemnity against the abuse of official authority, or the use of official station and power for improper purposes. It is said to be true, as a general rule, that the sureties on an official bond are liable only for such money as their principal may receive by virtue of his office ; and to this we assent. The difficulty is, to determine the proper application of the rule. The case of *Brown* v. *Mosely*, 11 Smed. & M. 354, is relied on as supporting the demurrer. The sheriff had an execution in his hands, and the defendant delivered him "Alabama money," estimated at eighty-five cents on the dollar, sufficient to pay it. The plaintiff in the execution refused to accept it, and enforced payment in lawful money. The defendant in the execution, having to pay lawful money to satisfy it, and unable to obtain from the sheriff the "Alabama money," sought a recovery for it on the official bond of the sheriff. The liability of the obligors was denied by the court, on the ground that the plaintiff in that action was neither within the condition of the bond, nor in the contemplation of the law which required the bond for the security of those whose rights are committed by law to the hands of the sheriff. This is the true ground on which to place the decision of the question and the liability of sureties on an official bond. If the case is within the condition of the bond, or within the contemplation of the law requiring it, the obligors are liable for its breach. The law, in requiring an official bond, contemplates it *as a security for those whose rights it commits in certain states of case to the officer*. It is

for that it is required. The defendant in an execution was not contemplated by the law as making payment in a currency not authorized by law, and in doing so he could not throw the risk of loss to himself on the sureties on the sheriff's bond. As to that matter, his rights were not committed by law to the sheriff, and he had no right to rely on the official bond of that officer for indemnity against loss by reason of his unauthorized dealings with him. The bond was conditioned and designed as a security for those whose rights and interests were committed to the sheriff, and they alone were to have remedy on it.

Adopting that principle as a criterion, and applying it to the facts of this case, a correct result will be reached with respect to the demurrer.

It was the duty of Furlong, as sheriff, to maintain the prisoners in the county jail, for which he was to be paid at a prescribed rate, to be obtained in a manner provided by statute. The averment is that he made a false claim for more than he was entitled to on this account, and thereby obtained money of the State to which he had no right. His bond is conditioned for the faithful performance of the duties of his office according to law, and to pay over all moneys coming into his hands by virtue of said office to the party entitled thereto. This bond was provided by law as a security for all whose rights should, under the law, be committed to the sheriff. It was intended to secure against the misuse of *official* position, and as a means of indemnity against all wrongful *official* acts.

If making claim for keeping and maintaining prisoners in the jail of the county is an official act of the sheriff, his bond must be held to be a security against a false claim, and the obligors liable for any sum improperly obtained by such claim. If he prefers such a claim *by virtue of his office*, his sureties are liable for the damages resulting from its illegal assertion.

The distinction between an *official* act, for which the bond is a security, and an *unofficial* act intimately connected with official duty, for which no liability attaches to the sureties on the

bond of a sheriff, is illustrated by *Brown* v. *Phipps*, 6 Smed. & M. 51, where it was held that although the sheriff was required to advertise the sale of land for taxes in a newspaper, and could not lawfully sell without such advertisement, and was authorized to sell such lands for enough to pay not only the taxes due, but the expenses of the sale, including the fees for advertising, his bond was not a security to which the publisher who had advertised the sale could resort to obtain his compensation. To the same effect is *The Commonwealth* v. *Swope*, 45 Pa. St. 535.

In *Brown* v. *Phipps* it is said, speaking of the condition of of the sheriff's bond: " This condition covers nothing more than such duties as the statute prescribes." The distinction seems to be clearly drawn between duties prescribed and rights which accrue to the sheriff. His duty was to advertise lands to be sold, and for a failure of that the sureties would have been liable. He had the right to sell to raise money to pay for advertising, but for a failure to exercise this right and pay the publisher what was due him for advertising, the bond was not a means of indemnity to the publisher. The manifest reason for the distinction is, that the duty prescribed was official. The right given was for his indemnification, and was personal or individual, and not official. He might exercise it or not. No duty was imposed on him in reference to it. Being for his benefit, he might exercise it or not, at his option, and the right of the publisher to be paid his fees was not within the contemplation of the law in providing the bond.

It was made the duty of the sheriff to maintain the prisoners in the county jail, and to make out his account, under oath, for the sum allowed by law for this service, which was to be examined and allowed by the district attorney, and then allowed by the Circuit Court of the county ; and on the production of the account and a certified copy of the order of the court allowing it, the auditor of public accounts was to issue his warrant on the treasurer for the sum shown to be due.

The sheriff was not allowed to pay himself out of any money in his hands, nor was he allowed to be paid on his own order, or by any act of his as an officer. He was not compelled to present any claim. He might not make out an account. He would have subjected himself to no liability if he had never asserted any demand for maintaining prisoners. He could obtain pay for it, but no obligation rested on him to do it. The manner of doing it was prescribed. His individual conscience was appealed to. His corporal oath was required. *He was to become a suitor for his dues.* The district attorney was to examine his claim, and allow, in writing, such amount as he found to be due. It was afterwards to be allowed by the Circuit Court of the county, and upon presentation of the account, and the order of the court allowing it, certified under the seal of the court to the auditor, he was to issue a warrant for its payment, unless he had serious doubts of the lawfulness of the allowance, in which case he was not to issue his warrant for it, but to report it to the next Legislature. Code 1871, sect. 143.

It is manifest that the presentation of an account by the sheriff for maintaining prisoners is an *individual*, and not an official, act, from the fact that he may do so, and in many instances must do so, if at all, *after his term of office has expired.* The account is to be made out and sworn to by him to whom it is due, and to whom the facts to be sworn to are known. He who rendered the service is entitled to the pay. The allowance is to be to him, and not to his successor in office. Every two years the term of office of a sheriff expires. In many counties it occurs that, on the day when the term of office of the sheriff expires, he has been maintaining prisoners in the county jail for months, with no opportunity, for want of a term of the Circuit Court of his county, to present his account for maintaining prisoners for allowance by the court. He has the right to present it, and obtain its allowance, after his term has expired, because it is due to him, and cannot be obtained in any other way or by any other person.

It is plain that the clause in the condition of the bond, "to

pay over all moneys coming into his hands by virtue of said office to the party '' entitled, has in contemplation money coming into the hands of the sheriff as a collector or a custodian for another than himself, and has no reference to money which he might collect for himself. The remaining stipulations of the condition have reference only to the performance of official duty by the sheriff. The matter complained of in this action is neither within the terms of the condition of the bond, nor within the contemplation of the law which provided it. The money wrongfully received by Furlong was not money coming into his hands as collector or custodian of it for another, and the presentation of his account was not an official act. It was not in the contemplation of the law which required the bond that it should be a security against the wrong of a false claim of the nature of this. The oath of the claimant, and the penalty of a false oath, and the scrutiny of the district attorney, and the Circuit Court, and the auditor of public accounts, and the penalty prescribed for collecting, under color of his office, any money not authorized by law (Code 1857, p. 590, art. 99), were the security provided by law against an illegal demand of this character, and the bond was exacted of the sheriff as a security for those whose rights were committed by law to his keeping. As we have shown, the rights of the State in this matter were not committed by law to the sheriff, but to the designated officers of the State, who were to stand between him and the treasury. The position of the sheriff, as to this claim, was very different from that of the county treasurer in *Howe* v. *The State*, 53 Miss. 57, who, being under official obligation to pay over all money of which he was the legal custodian, except such as he was legally entitled to for his commissions, was held bound for a balance illegally withheld by him. In that case no question was made as to the liability on the bond.

There is a great want of similarity between the relation of the sheriff to the treasury, as to his account for keeping prisoners, and that of the officials in the cases cited by counsel for

the appellee. In those instances the officer was enabled by his official act to wrongfully obtain money from the treasury, and it seems surprising that it should have been insisted that the bond of the officer was not a security against loss from such acts. It was to indemnify against official misconduct that the bond was required, and in each of those cases the act was indisputably an official act.

Another question made by this record, and upon which we were requested by counsel on both sides to express our views, is as to the Statute of Limitations as a bar to the action. It is conceded that more than seven years had elapsed after the 19th of April, 1873, and before the commencement of the action. The Code of 1871 contained no provision for barring actions on sealed instruments. The right of action in this case is treated as having accrued after the Code of 1871 became operative, and before the act of April 19, 1873, entitled "An act entitled an act to amend the Statute of Limitations relating to sealed instruments." Acts 1873, p. 42. In this state of case it is insisted, by counsel for the State, that the act of April 19, 1873, did not bar the action, because it is said it did not embrace official bonds, and did not affect the State, which is neither included in its terms nor its implication, and because it was prospective entirely in its operation, and did not embrace causes of action accrued before its passage.

We cannot adopt the view that the act referred to does not include official bonds. Its language is, that "all actions * * * upon any bond, obligation, or contract, under seal, * * * shall be commenced within seven years," etc. The terms "any bond, obligation, or contract, under seal," are comprehensive enough to embrace, as they were intended to do, all bonds of every sort. The proposition of counsel, on the correctness of which their argument rests, is, that the act of April 19, 1873, did not run against the State, nor embrace preexisting causes of action, and is to be regarded as an independent act, standing alone, apart from the Code, and to be construed by itself. To this we cannot assent.

The Code of 1871, as proposed to the Legislature, abolished the distinction between instruments by reason of seals. The chapter on the Limitation of Actions, as submitted to the Legislature, conformed to the proposed obliteration of distinction between sealed and unsealed instruments. The Legislature, in adopting the Code, preserved the distinction between these instruments, but failed to provide for barring them by limitation. The act for the limitation of actions, as passed in the Code of 1871, is the act on the same subject in the Code of 1857, with the change of art. 29 of the act (as shown by sect. 2173 of the Code of 1871), and the omission of art. 10 (which had been pronounced unconstitutional by the Supreme Court of the United States in *Russell* v. *Christmas*, 5 Wall. 290; and was left out of the Code as submitted to the Legislature), and of art. 6, which provided a limitation for all contracts under seal. When the act of April 19, 1873, was passed, it became a part of the act for the limitation of actions, as contained in the Code of 1871, and was to be construed with reference to all its provisions. No other course is admissible. If this is not so the most anomalous and extraordinary consequences would ensue. As to actions on sealed instruments, there would be no saving to persons under disabilities, nor, in case of absence from the State, would the provision of the Act of Limitations apply, nor would a fraudulent concealment of the cause of action make any difference, nor would the extension of time in case of the death of the party entitled or liable to the action apply, and so of several other provisions of the Act of Limitations.

The rule that all statutes on the same general subject are to be construed together as parts of a whole, each adjusted to the other, and that a law amendatory of an existing law is, from the date of its becoming operative, to be construed as if it had been enacted as a part of the law amended by it, is well settled. Considered as having become a part of the general law for the limitation of actions from its enactment, the act of

April 19, 1873, ran against the State by virtue of sect. 2169 of the Code of 1871.

The case of *Clements* v. *Anderson,* 46 Miss. 581, has been pressed in argument as decisive of the proposition that the act of April 19, 1873, is not to be treated as part of the Act of Limitations, as contained in the Code of 1871. In that case the court, without remarking upon it, treated the State as not affected by the act of February 6, 1860, to remedy the evils occasioned by the burning of the court-house of Attala County. From that the inference is drawn by counsel that an act subsequent to the Code amendatory of the law for the limitation of actions is not to be considered as incorporated in such law, and to be construed as part of it and subject to its several provisions. The case cited does not justify the inference. The act of February 6, 1860, referred to above, was a local act for Attala County, to meet an evil found to exist there. It was not a general law, and had no reference to or connection with the law for the limitation of actions as applicable to the State. It was a special act for a prescribed locality and particular purpose, having no relation to the Commonwealth. The cases of *Boyd* v. *Barrenger,* 23 Miss. 269 ; *Garrett* v. *Beaumont,* 24 Miss. 377, and *Murray* v. *Gibson,* 15 How. (U. S.) 421, are relied on as establishing a contrary view. The argument is, that the act of March 5, 1846, construed in those cases as not applying to antecedent causes of action, was treated as not having become part of the act of February 24, 1844, for the limitation of actions, and, therefore, the act of April 19, 1873, above cited, should not be held to have become a part of the act for the limitation of actions, as contained in the Code, and subject to its several provisions. It was not considered in any of those cases whether the amendatory act of March 5, 1846, was to be treated as having become part of the act it amended. Nor was the question in either of the cases decided by the court of the State, whether the act of March 5, 1846, commenced to run, as to preëxisting causes of action, from the date of its approval.

In *Boyd* v. *Barrenger*, the action was instituted in about six months after the passage of the act of March 5, 1846, and it was held that the act barring such causes of action in three years did not apply, because that time had not elapsed since the passage of the act. . In *Garrett* v. *Beaumont* the action was commenced a year before the passage of the act of March 5, 1846, and the effort of the defendant to avail of a bar not created until long after suit instituted against him was ridiculous, and was condemned as not maintainable. In the last-named cause the court, speaking of whether the act of March 5, 1846, would bar a judgment existing at the date of its enactment, where three years had elapsed after that date, said : " This question was not presented by the record in the case of *Boyd* v. *Barrenger*, and was consequently not decided. Neither is it decided in the present case, because it does not arise upon the record before us. This is still an open question in this court, and we deem it proper to leave it so till it shall be presented by a case in court, and argued." Notwithstanding this plain declaration of the court, and the facts of the cases, which did not present the question, it is true, and as amazing as it is true, that in *Murray* v. *Gibson*, the Supreme Court of the United States, professing to adopt the construction placed by the appellate court of this State on the statute, misconceived its decisions, and misapplied them to a case where the prescribed time had 'elapsed after March 5, 1846. We are unwilling to follow the lead of even the Supreme Court of the United States in a total misconception and perversion of the decisions of our predecessors.

We hold that the act of April 19, 1873, on its passage became a part of the Act of Limitations contained in the Code, and that time commenced to run on existing causes of action on all sealed instruments from the date of the act ; and that by virtue of sect. 2169 of the Code of 1871 it ran against the State ; and that this action was barred when it was commenced, and the demurrer to the plea of the Statute of Limitations of seven years should have been overruled.

The foregoing views in no way affect the question of the personal liability of Furlong, nor preclude the State, on a proper presentation, from the benefit of that provision of the Statute of Limitations, as to him, that in case of fraudulent concealment of the cause of action, the cause shall not be deemed to have accrued until discovery of the fraud was made, or with reasonable diligence might have been, or from anything else which may obviate the bar of the Statute of Limitations. The present action may be converted by amendment into one against Furlong individually, if this is found to be desirable, and necessary to the ends of justice.   We reverse the judgment, and remand the cause for the Circuit Court to sustain the demurrer to the declaration, and make such further orders as may be according to law.