Calhoun v. Burnett et al.

## J. Calhoun v. F. Burnett et al.

1. Constructive Fraud: Purchase with Notice: Trustee for Owner.—Purchases made with notice of the legal or equitable title of another to the property, are classed in equity under the head of constructive frauds, and courts of equity will hold such purchasers as trustees for the legal or equitable owner.

2. Trustees: Extent of Liability as to Trust Property.—Trustees are bound to hold the trust property in good faith for the purposes of the trust; and if they sell or dispose of it, and convert the proceeds to their own use, they are liable to the *cestui que trust* for the actual value of the property so appropriated.

3. Courts of Equity: Trustees: Remedy to Enforce Liability Against.—The remedy to enforce the liability of a trustee, for an improper disposition of trust property, is by bill in equity: the jurisdiction does not depend on the character of the property, but upon other and well-established principles of equity jurisprudence.

4. Slaves: Trustee: Liability for Improper Disposition of Slaves not Affected by their Emancipation.—A purchaser of slaves, with notice of the legal or equitable title of another, becomes a trustee for the owner; and if such purchaser disposes of the slaves and converts the proceeds to his own use, the subsequent emancipation of the slaves will not affect the right of the owner to enforce compensation to the extent of their value.

5. High Court of Errors and Appeals : Practice and Pleading : Final Decree.— When a cause in equity has been finally heard in the court below, and an appeal taken to this court, it will not remand the cause for further hearing in the court below, if the final decree be erroneous, but will proceed to render such a decree as the court below should have rendered.

Appeal from the Chancery Court of Leake county. Hon. E. G. Henry, judge.

*George L. Potter*, for appellant, contended,

1. That appellees were not *bonâ fide* purchasers. The testimony of Doles, and the circumstance attendant upon the sale,

and conduct of appellees in secreting and running off the slaves, show that they had notice of the title of appellant.

If a party has notice before he has paid the whole purchase money, he cannot claim as a *bonâ fide* purchaser. *Wormley* v. *Wormley*, 8 Wheat. R. 449, 450; *Tomville* v. *Naish*, 3 P. Williams' R. 307.

The rule is the same where all the money has been paid without notice, if the party has notice before the deed is executed. *Wigg* v. *Wigg*, 1 Atkyns, 384.

2. The subsequent emancipation of the slaves cannot affect the right of appellant. His claim rests on the prior fraud of appellees, and as the slaves were wrongfully withheld, appellees took the risk of loss and of all injury to them. *Jackson* v. *Crofts*, 14 Johns. 110; *Darling* v. *Chapman*, 14 Mass. 104; *Arnott* v. *Post*, 6 Hill, 65.

When slaves are wrongfully withheld, the wrongful holder is responsible for hire, and value, if they die. *Shannon* v. *Spears*, 2 A. K. Marshall, 312; *Dory* v. *Sandy*, 5 J. J. Marshall, 37.

*O. A. Luckett* and *Robt. S. Hudson*, for appellant, cited 2 Story's Eq., sections 1257 to 1265; *Lowery* v. *Houston*, 3 How. Miss. R. 394; *Glass* v. *Lobdell*, Walker's R. 105; *Thompson* v. *Wheatley*, 5 S. & M. 499; *Dismukes* v. *Terry*, Walker's R. 197; 2 Story's Eq. 790, 791, 792, 1269, 1270; 1 Story's Eq. 28, 533; 1 Johns. Ch. R. 132; 3 Humph. 413; 20 Johns. 576; 1 Story's Eq., sections 508 to 513.

*George Hill*, for appellees, contended,

1. That the evidence of notice of an outstanding title was nothing more than a vague rumor or surmise, and such notice is insufficient. 2 Leading Cases in Equity, Part 1, page 112.

2. That appellant cannot abandon the main object of his bill, the recovery of the slaves specifically, and seek to recover damages by way of compensation. Damages are recoverable in equity merely as an incident to other relief, and not as the principal relief prayed for. 2 Story's Eq., sections 708, 794, 797, 798; Adam's Eq., pages 499, 262; 2 Parson's Cont., 3 ed. 280, 560; *Scott* v. *Billgerry*, in this volume.

3. That if the value of the negroes would be full compensation, the remedy is at law for the recovery of that value. 2. Story's Eq., section 708; 1 Lead. Cases in Eq. 586, Am. notes; 2 Parson's Cont. 477.

4. That if appellees were not in possession of the property at the time of the institution of the suit, the action fails. Possession is essential to the jurisdiction of the court. *Brown* v. *Gooldsby*, 34 Miss. 437.

5. That the emancipation of the slaves precludes appellant from all relief. 2 Parson's Cont. 560.

ELLETT, J., delivered the opinion of the court.

Calhoun filed his bill in the Chancery Court of Leake county, against Francis Burnett, Jordan E. Allen, and others, in which he alleged that R. J. Morgan and W. Morgan, in 1858, executed a deed of trust in the State of Texas, where all the parties resided, and where the property was situated, whereby they conveyed certain land and slaves to W. Alexander, as trustee, to secure certain debts due to the complainant; that in February, 1859, R. J. Morgan ran off the slaves from Texas to Leake county, Mississippi, and there sold four of them to defendants Francis Burnett and Allen, for an inadequate price; that Morgan was assisted by one Bartlett, and that Burnett and Allen, at and before their purchase, had notice of the deed of trust, and that the slaves had been run off in fraud; that said Burnett and Allen removed the slaves in the night, and secreted them; and that James Burnett, John Burnett, and Pinckney Bowie, confederated with and aided them to conceal said slaves, and remove them from place to place, so as to prevent complainant from finding them; that Alexander, the trustee, is a citizen of Texas, and can give no attention to the trust, and will not attend to it in this State; and prays that the defendants be declared trustees, and be decreed to deliver up the slaves to be sold under the deed of trust for the payment of complainant's debt, and that if the defendants have sold the slaves, that they may be required to pay the value, etc.

The notes and deed of trust are made exhibits to the bill.

The answers of Francis Burnett and Jordan E. Allen admit that they bought four of the slaves from Morgan on the 12th of February, 1859, at the house of Doles, near Carthage, in Leake county, for about $1,200; but they deny any notice or knowledge of complainant's claim, and insist that they are *bonâ fide* purchasers for value, without notice. They admit that the purchase was made in the night, and that the slaves were immediately carried to Carthage; and that, on the next morn ing, Allen received a letter from a friend in Canton, giving him information of the facts, whereupon they at once ran the slaves off to Neshoba, and thence to Winston county, and kept them concealed until they sold them to Ries, on the 26th or 27th of February, for $1,600. They further admit, that of the original purchase-money, only the sum of $300 was paid in cash, and $250 in horses, and that the residue of $700 was assumed by them to Bartlett, by request of Morgan, to be paid when they could raise the money by sale of the negroes, or otherwise; and that this part of the purchase-money was not paid until after the sale to Ries, by whom it was assumed to Bartlett, afterwards paid.

The answers of John and James Burnett, and of Bowie, admit their participation in carrying away the negroes, at the request of Allen and Francis Burnett, but deny any notice of the claim of complainant, and only state in substance that they were informed by Allen and his copartner that there was a doubt about the title, and that they wished to keep the negroes out of the way.

Doles, a witness for complainant, testified that actual notice was given by Morgan and Bartlett, to Allen and Burnett, of the existence of complainant's deed of trust, and that the negroes had been run from Texas to avoid it, and that they were advised to get the negroes out of the way as soon as possible. And in answer to this proof, it is shown that Doles was drunk on the day of the sale, and was in habits of intoxication at that time. The witness that proves this, made a purchase of property from Doles on the same day of the sale of the negroes.

On the 25th of February, 1861, an order of reference was made to a commissioner, to report the amount due to complain-

ant on the debt secured by the deed of trust, and the commissioner on the same day reported the amount then due to be $7,632.20, which report was confirmed on the 27th of the same month, and the cause was then submitted on final hearing. On the next day the Judge filed a written opinion, which is set out in the record, and which concludes by declaring that the complainant is entitled to a decree for the return of the negroes, or for their actual value, to be ascertained by a commissioner to be appointed for that purpose, and a decree was ordered accordingly. Nothing further was done until February, 1866, when an order was made appointing a commissioner to report the amount due from respondents to complainant, and also the value of the slaves. This commissioner reported the value of the slaves, and the amount due the complainant from Allen and Burnett, to be, on the 23d February, 1866, the sum of $3,990. To this report the following exceptions were filed, to wit:

1. That the value of the negroes is not properly involved in this controversy.

2. The court cannot make a decree in favor of said complainant against said defendants, for the value of the negroes as damages in this cause.

3. The said negroes, since the making of the said decree of reference, have ceased to be property, and cannot be delivered by defendants.

These exceptions were sustained by the court, and the bill dismissed, and the complainant appeals. The action of the court in sustaining the exceptions, and dismissing the bill, is assigned for error.

On this case, thus briefly stated, we may remark that purchases, made with notice of the legal or equitable title of other persons to the same property, are classed in equity under the head of constructive frauds, and that in all such cases of purchases with notice, courts of equity will hold the purchaser a trustee for the benefit of the persons whose rights he has thus sought to defraud or defeat. 1 Story's Eq., section 395.

Doles testifies clearly, that Allen and Francis Burnett had

full notice of the complainant's claim upon the property while the negotiations was going on, and before the bill of sale was executed, or any part of the purchase-money paid, and we see no reason to doubt the truth of his statements. If he was intoxicated on that day, he was at least deemed competent to make contracts on his own behalf, and there is nothing shown to disprove his capacity to understand and recollect what was passing around him. The bill being sworn to, the necessity for more than one witness to overcome the answer is removed; but we think the testimony of this witness sufficiently corroborated by the circumstances otherwise established to entitle it to preponderance over the answers, if the bill were not sworn to.

The facts that the negroes were brought all the way from Texas to Leake county in this State, to be sold; that it was agreed before starting between Morgan and Bartlett, that they should be sold at that point, passing by the markets of New Orleans and Vicksburg; that they were not offered in Carthage, but carried to the house of Doles, two and a half miles distant; the anxiety to sell, and to sell "low for cash;" the late hour of the night when the sale was made; the actual sale for not one-half the value, of which only $300 was paid in cash—were all calculated to excite suspicion, and put the purchasers on inquiry, and go far to persuade an indifferent mind, that what Doles states is the truth of the case. And this conclusion is strengthened by the fact, that although Bartlett, Morgan, Allen, and Burnett were all competent witnesses, none of them was introduced to contradict him.

Allen and Francis Burnett, having then purchased the property with notice of the trust, are chargeable as trustees, and were bound to hold it in good faith for the purposes of the trust. If it remained in their hands they would be compelled to surrender it. But having sold and disposed of it, so that it can no longer be followed, and having converted the proceeds of the sale to their own use, they are clearly liable to compensate the *cestuis que trust,* by payment of a sum equal to the actual value of the trust property so appropriated. Hill on Trustees, 522. The proper remedy to enforce this liability is

by bill in equity. Hill on Trustees, 518. It is a case of constructive fraud and of implied trust, both appropriate heads of equity jurisdiction. Besides, the complainant only had an equitable interest in the property, and could not have maintained an action at law. This is a very different case from that of *Brown v. Gooldsby*, relied on by the appellee. That was a bill in equity by the owner of the legal title, to recover a slave ; such a remedy having been allowed in this state on account of the peculiar nature of that species of property. It turned out that the defendant was not in possession of the property when the suit was brought, and the bill was therefore dismissed, because there could be no decree for the recovery of the property, and because the rule had never been extended so far as to allow a bill in equity to recover damages for the conversion of a slave, where there was no other ground of jurisdiction. But the jurisdiction in the present case does not depend at all upon the character of the property, but rests entirely upon other and well-established principles of equity jurisprudence.

Nor can the fact that slavery has been abolished have any effect upon the rights of the parties. There is indeed no proof that any of these negroes were alive when the emancipation took place, or that they were not voluntarily set free by the person to whom the defendants sold them. That sale took place while the negroes were slaves. The purchaser acquired the property in them, and if they have since been embraced by the general act of emancipation, the loss has been his, not that of the defendants. They received the price, and have enjoyed it ; and their liability to pay the actual value of the slaves to the complainant accrued at the time of the sale to Ries, and has not been affected or altered by any subsequent events.

The decree dismissing the bill will be reversed, and, as the whole case was on final hearing in the court below, this court will proceed to render such decree as that court ought to have rendered. The exceptions to the report of the commissioner will be overruled, and the report confirmed, and a decree entered for the complainant against the defendants, Jordan E. Allen and Francis Burnett, for the amount stated in the said

report, with interest from its date, and costs, and the bill will be dismissed as to the defendants James Burnett, John Burnett, and Pinckney Bowie, as to whom no sufficient ground has been shown for relief.