## JAS. F. CUMMINGS at al. *v.* A. A. OGLESBY.

1. ASSIGNMENT OF A NOTE BY A VENDOR TRANSFERS THE LIEN. — The assignment of a note by a vendor of land transfers *pro tanto* the security which vendor had for its payment. Tanner v. Hicks, 4 Smed. & Mar. Reps., 294. If the land is conveyed to an innocent and *bona fide* purchaser, the vendor who held the legal title as security, as well for his assignee as for himself, becomes thereby trustee for his assignee, and if he be faithless and destroy the lien on the land, he is still liable as trustee for the purchase money which he has realized. Pitts v. Parker, 44 Miss. R., 252; Terry et al. v. Woods et al., 6 Smed. & Mar., 149; Parker v. Kelly, 10 Smed. & Mar., 191.

2. ASSIGNMENT OF PURCHASE MONEY. — An assignment of the purchase money or any part of it, invests the assignee with all the rights of the vendor. It cannot be displaced but by some act of the assignee. It may be postponed in favor of an innocent purchaser, without notice, who has parted with value.

APPEAL from the Chancery Court of Panola County. Hon. J. F. SIMMONS, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*Harris & George, R. W. Crump* and *Miller & Miller*, for appellants, contended that the note formed no part of the consideration for the land and was, therefore, not a lien upon it. It is always competent to show the true consideration, and even a different one from that expressed on the face of an instrument. 3 Pars. Cont. (5th ed.), 14. Smith on Contracts (4th ed.), 43. Our statute does not require the consideration to be expressed; hence it is not a violation of the statute of frauds to show the true consideration. 4 S. & M., 91. 34 Miss., 173. 45 ib., 129. Patterson v. Edwards, 29 Miss., 67. The lien which is the incident of a note given for land grows out of the peculiar relations of vendor and vendee; and there must exist between them the relation of debtor and creditor as to the note. 25 Miss., 88. 44 Miss., 247. Revised Code of 1871, § 1086. The agreement therefore had the effect to supersede the lien. If the vendor of land, who executes a deed, assigns the note for the purchase money, it is well settled that no lien passes, and that if a vendor who has only given bond for title, assigns the note, and afterwards makes a deed, the assignee may still proceed against the land, his security being affected by the conveyance. The mere act of conveying to Cummings did not damage or affect Oglesby; his security remained the same. Parker v. Kelly, 10 S. & M., 184. Walker v. Jeffries, 45 Miss., 160.

Reporters find no brief in the record for appellee.

SIMRALL, J., delivered the opinion of the court:

Jackson sold to Cummings a quarter section, on the 17th of January, 1870, retaining the title until payment of the purchase money.

The controversy grows out of the connection of Oglesby with

the sale, and with the assignment of the first note for $1,200 to him. It is contended by the appellants, that Oglesby advanced the first payment on the land, and took the note of Cummings, with Jackson's indorsement without recourse, as a memorandum, or evidence of Cummings' indebtedness to him, for the money advanced for him to Jackson, thereby disconnecting that note from the land trade, as representing a part of the purchase money.

Oglesby maintains, that the note was indorsed and transferred to him, with the same benefit of security, upon the land, as it would have had in the hands of Jackson.

Jackson conveyed the land to Cummings, whilst the note was outstanding in the hands of Oglesby, and with positive knowledge that it was unpaid; and on the day after, Cummings sold and conveyed to Mrs. Parish for a price paid in cash, several hundred dollars more than he agreed to pay, to Jackson. If the theory of the case put forward by Oglesby be correct, and has been established by evidence, then a gross fraud has been practiced upon Oglesby. The chancellor was of opinion and so determined, that Oglesby had sustained his case by the evidence. Was that conclusion wrong?

The depositions of the witnesses, those that seem to us to give the most probable and reliable account of the matters in controversy, considered in connection with the written documents, furnish an easy solution of the disputed points.

Jackson desired to get for his land $1,200 cash, and $1,200 twelve month thereafter. Cummings could not raise the money for the cash payment. Oglesby being a man of some wealth and a lender of money, agreed for the accommodation of Cummings, to assist in the consummation of the trade with his money. The payments were secured (as appears in Jackson's bond) by one note for $1,200 at ten per cent. interest from date, payable 1st January, 1871, and a note for the like sum due 1st January, 1872, at six per cent. interest for the first year, and ten per cent. thereafter. The title, bond and notes were dated the 17th of January, 1870.

The purpose of Jackson was to realize $1,200 in hand and the like sum a year thereafter. How that should be accomplished is manifested by a writing dated the 11th of January, 1870, signed by Jackson, Cummings and Oglesby. After stating that Cummings was to make his two notes, of the term and maturity above specified, it is recited that Oglesby agrees to cash the first note at five per cent. discount, the discount to be paid by Cummings, and Oglesby agrees also to indorse on the second note that he will cash the same on the 1st January, 1871, at the face of said note.

The first note, in its body, contains the statement that it was for the first payment of the quarter section of land, and was indorsed thus: "For value received I transfer and assign the within note to A. A. Oglesby without recourse on me." Signed J. R. Jackson.

It is impossible to put any other construction on these papers, than that Oglesby was to use his money to buy or discount the note, so as to enable Jackson to get his cash payment; and that the second instalment might not be postponed longer than twelve months, he agreed at that time to pay the face for that note. It is in evidence that Oglesby was applied to, because he had moneyed means, and used it in loans, and that he participated in the trade after another person, who was also a capitalist, had declined. It is shown that Cummings was a comparative stranger to Oglesby, and that the latter was under no special obligation to do him a favor. Oglesby was willing to advance his money, because he thought the land was worth fully the price agreed to be given, and was an ample security. This exposition arising upon the face of the papers is borne out by the testimony of Oglesby and Halpin, and partially by Crump. The latter thinks that he told Oglesby that the land was security for the note. Halpin, who held the note for collection for Oglesby, states that about a month before the note was due, Jackson and Cummings called upon him and examined the note. Cummings submitted an offer to pay the face of the note, and desired Halpin to write that proposition to

Oglesby, who was in California; he also proposed if Oglesby would accept that offer, he would also pay off the second note at the same time. Cummings also said, that although the note was well secured, if.Oglesby declined his propositions, he must get his money at the end of the law. Cummings proffered to deposit the money with a merchant in Lardis, to await an answer from Oglesby. Shortly after this Halpin informed Cummings that he had authority to accept his offer.

It would be hard to resist the conviction that both Jackson and Cummings knew that Oglesby looked to the land as security, and that they were willing for any pretext, to defeat and destroy it. Nor can it be well doubted that both Jackson and Cummings were privy to the plan by which the sale should be made and title conveyed to Mrs. Parish, who was ignorant of Oglesby's equity.

The transfer of the note by Jackson to Oglesby, transferred also *pro tanto* the security which Jackson held for its payment. Tanner v. Hicks, 4 S. & M., 294. That security might have been enforced by Jackson. Ib. But so soon as Jackson was paid the last instalment retained by himself, he conveyed to Cummings. Manifestly the land in Cummings' hands would have been liable to Oglesby's equity. But he conveyed to Mrs. Parish, an innocent and *bona fide* purchaser. In such circumstances, Jackson, who held the legal title as security as well for his assignee, Oglesby, as for himself, became thereby trustee for Oglesby. And if he has been faithless, and has destroyed the lien on the land, he ought to be still held trustee for the purchase money which he has realized, and be required to make the complainant sound and whole by paying him the value of the security.

Cummings was an equal participant with Jackson, perhaps the guiltier of the two (since he reaped the benefit) in the acts which defeated the lien, and should share in the responsibility. The nature and efficacy of the lien upon which Oglesby advanced his money is described in Tanner v. Hicks, 4 S. & M.; Terry et al.

v. Woods et al., 6 S. & M., 149; Parker v. Kelly, 10 S. & M., 191, and Pitt v. Parker, 44 Miss., 252. It is in effect like conveying the title and taking security by mortgage. An assignment of the purchase money, or any part of it, invests the assignee with all the rights of the vendor. It cannot be displaced but by some act of the assignee. The assignor cannot release it. It may be postponed however in favor of an innocent purchaser, who has parted with value and had no notice, which was the predicament of Mrs. Parish.

The decree is affirmed.