YANDELL et al. v. WILSON et al.

(En Banc. Sept. 26, 1938. Suggestion of Error Overruled Nov. 7, 1938.)

[183 So. 382. No. 33235.]

868

Ceylon B. Frazer, of Memphis, Tenn., and H. Talbot Odom, of Greenwood, for appellants.

Alfred **Stoner** and **W. H. Montjoy,** both of Greenwood, for appellees.

874

**McGehee, J.,** delivered the opinion of the court.

There are two questions presented for decision on this appeal: First, whether certain promissory notes were delivered to the appellants by the alleged donor in such manner as to constitute a completed gift inter vivos; second, whether the alleged donor thereafter assumed custody and control of, dealt with, and destroyed the value of the notes and their attendant security in such a manner as to constitute himself a trustee thereof under circumstances such as to render the ten-year statute of limitation, relating to cases where there is the existence of a trust not cognizable by the courts of common law, applicable to the commencement of this suit, instead of either the three or six-year statutes of limitation.

The appellants, Mrs. Nellie Wilson Yandell and Mrs. Annie Yandell Potter, are the daughter and granddaughter, respectively, of Geo. A. Wilson, of Greenwood, Mississippi, who died in the month of November, 1930. Long prior to his death Mr. Wilson had accumulated considerable property, and was the majority stockholder and president of the Wilson Banking Company. On the 10th day of December, 1919, he delivered to the Wilson Banking Company of Greenwood, as trustee for the appellants, certain promissory notes signed by E. L. Parker and E. L. Parker, Jr., of the aggregate face value of $30,000, payable on January 1st, 1928, 1929 and 1930, respectively, to Geo. A. Wilson or bearer, bearing interest at the rate of 6% per annum, payable annually on the first day of each year, and secured by a first mortgage or deed of trust on a plantation consisting of approximately 1,250 acres of Delta farm land in Sunflower County, Mississippi, known as the White Deadening Plantation; and which mortgage or deed of trust was duly recorded in that

county. These notes were delivered to, or deposited with, the Wilson Banking Company, in trust for the appellants, as constituting a gift to them from the said Geo. A. Wilson; and as evidence thereof the Wilson Banking Company executed the following receipt and agreement:

"This is to certify that G. A. Wilson, has deposited in this bank, the three notes given him on Aug. 26th, 1919, for twenty thousand dollars each, bearing six per cent interest from dates and payable annually on the first day of Jany, 1920, and on each successive Jany. 1st, until paid, and which said notes are due and payable at this bank, on Jany. 1st, 1928, 1929, and 1930, and are secured by a deed of trust on White Deadening Plantation, in Sunflower County, Mississippi, and are given by E. L. Parker and E. L. Parker, Jr., and are deposited with this bank in trust for Mrs. Nellie Wilson Cartmell and her children, and we agree to collect the interest and safely keep the said notes without costs. Wilson Banking Co., by G. A. Wilson, President.''

On February 16, 1920, Mr. Wilson wrote to his daughter, Mrs. Yandell, among other things, the following: "Mr. E. L. Parker, the maker of the three notes I gave you and your children last fall, did not pay the interest on the notes, which was payable January 1st, 1920, until last week. . . . The next payment of interest will be for a whole year, and comes to $3,600.00. You and each of your children will be entitled to one-fourth each of the interest annually, which will be $900.00 each.'' And, for more than ten years thereafter and until his death during the latter part of the year 1930, Mr. Wilson continued to recognize the fact that he had given the notes to the appellants, and collected the interest thereon annually, deposited the same to his personal account at the bank, and remitted the same each year to the appellants in most instances by means of his personal checks therefor. As late as January 29, 1929, he deposited the interest for 1928 in the bank for the donees, and forwarded a deposit slip containing a pencil notation in his own handwriting,

"For interest on your Parker notes to January 1, '29, G. A. Wilson." On January 2, 1930, he wrote to his granddaughter, Mrs. Annie Yandell Potter, among other things, that "the interest on each one's notes per annum is $900.00. You will therefore give Nellie half of the enclosed check on the Guaranty Trust Company of New York for $1,800.00, or rather, divide the money." Again, on April 10, 1930, he wrote to his granddaughter and referred to these notes as "the notes I gave you that are secured by a mortgage on a cotton plantation near here." It is undisputed that the letters all referred to the Parker notes in question.

It does not appear when Mr. Wilson re-acquired the possession and manual custody of the notes after he had delivered and deposited the same with the Wilson Banking Company to be held in trust for the appellants, but the proof shows that he did in fact thereafter assume control and custody thereof and handle the same exclusively, assuming to perform the obligations originally undertaken by the Wilson Banking Company, from and after the time that the gift of the notes was completed by their delivery to the bank. They were found in the private lock box of Mr. Wilson at the bank subsequent to his death and were delivered by the executors of his estate to the appellants. It is so well settled under the authorities that the delivery of the notes to the bank to be held in trust for the appellants, under the circumstances above stated, amounted to a completed gift that an extensive review of decisions is unnecessary.

It is urged, however, that the Wilson Banking Company was not authorized under its charter to act as trustee and was without authority under the law to do so. Be that as it may, equity will not permit a trust to fail for want of a trustee qualified to act. The beneficiaries of the trust were entitled to select, or cause to be selected, a trustee legally qualified to administer the trust, and the proof discloses that the donor assumed to act and constituted himself the trustee with the acquiescence of

the beneficiaries of the trust, thereby creating the relationship of trustee and cestuis que trustent between himself and the owners of the equitable and beneficial interest in the notes.

It was said in Williamson v. Yager, 91 Ky. 282, 15 S. W. 660, 34 Am. St. Rep. 184 that [page 661]: "If one delivers possession of personal property to a trustee to hold as a gift for the donee, it is certainly a valid gift, and if he expressly says or does acts amounting to the same thing, he constitutes himself a trustee to hold the property for him. We perceive no reason why this should not be as valid and binding as a delivery of the property to a third person to be held in trust for the donee; the only difference being that in the first-named case the trust, by clear and explicit language, or acts amounting to the same thing, should be perfectly created, in order to prevent the confounding of the trust with an imperfect gift. Therefore, in seeking to enforce the trust, the donee must show that the donor has left nothing undone that is necessary to create it, and if it appears that the donor has yet to make a conveyance to the donee, the trust will not be enforced, because not perfectly created. . . . But if nothing is required of the court but to give effect to the trust as an executed trust, it will be carried into effect, although it was without consideration, and the possession of the property was not changed. This is upon the broad principle that in such matters a party may make himself trustee, as well as a third person." Discussing the right of the donor trustee, following the declaration of trust, to exercise dominion and control over the subject of the gift, the court in the case supra further said: "But, conceding that she, by such act, did undertake to recede from the gift, and assert her right to the notes, she could not do so after having declared a perfect trust in favor of the appellees. The title to the notes by that act passed to them, which the appellant could not thereafter recall without the appellees' consent, which they never gave."

The total amount represented by the notes referred to as having been given to his daughter and her children was $60,000, and the two shares of the appellants amounted to a total of $30,000, there being four donees of this gift.

The proof shows that the $30,000 worth of the notes are all part of a series of notes amounting originally to the principal sum of $220,000; and that the notes of the series outstanding and unpaid during the year 1922 were recast, as of March 15, 1922, by agreement of the said G. A. Wilson and the makers thereof, and $30,000 worth of the series as recast became due and payable January 1, 1933, 1934, 1935, and 1936, respectively, and were substituted for the notes mentioned in the receipt and agreement executed by the Wilson Banking Company on December 10, 1919, hereinbefore mentioned.

The mortgage or deed of trust securing the original notes and the new notes, when recast, remained of record in the name of Geo. A. Wilson, as beneficiary therein, although the lien thereof passed, under the law, as an incident to the gift of the notes to the appellants. Thereafter, on the 21st day of September, 1927, the said Geo. A. Wilson waived the priority of such lien on about one-half of the 1,250 acres of land in favor of a deed of trust executed by E. L. Parker and E. L. Parker, Jr., in favor of the Federal Land Bank of New Orleans, Louisiana, to secure a loan of $20,000; and on the 21st day of October, 1928, the priority of the said lien was waived by the said Geo. A. Wilson on the remainder of said land in favor of the lien of a deed of trust given by the said E. L. Parker and E. L. Parker, Jr., for the sum of $20,000 in favor of the Joint Stock Land Bank of Mississippi, such waivers being executed without the knowledge or consent of the appellants. The proceeds of these two $20,000 loans were applied on certain other notes belonging to the $130,000 series, some of which were then held by the Wilson Banking Company as collateral, and especially to the payment of those notes of said series which were given to the oth-

er two children of the appellant, Mrs. Nellie Wilson Yandell. The action of the donor, Geo. A. Wilson, in waiving the priority of the lien of the mortgage or deed of trust given in his favor on the 1,250 acres of land by the said E. L. Parker and E. L. Parker, Jr., insofar as such waiver affected and destroyed the value of those notes given to the appellants, is the subject matter of the complaint involved in this litigation, for the reason that the deeds of trust held by the two subsequent lienors were later foreclosed during the year 1931 for an amount not in excess of the indebtedness represented by the two said loans.

Assuming control of the notes and executing the waivers aforesaid, Mr. Wilson constituted himself a trustee de son tort of the security and became liable to the appellants, as owners of the equitable and beneficial interest in the lien, and became liable to account to them, as such trustee, for the value of the notes, which was shown by subsequent events to have been completely destroyed by his unauthorized act. There is no contention that the land was not worth the full amount of the notes of the series secured by the lien, which remained outstanding and unpaid at the time of the execution of such waivers, some of the notes of the series having been sold at an almost nominal discount for cash, and not long prior to the waiver of the lien securing same. Moreover, it is stated in the answer of the appellees that at the time of the execution of these waivers, Mr. Wilson, in good faith, believed that the property on which the lien existed was worth the full amount of both the two new loans of $20,000 each and all of the then unpaid purchase money notes on the land, and in which unpaid balance of the purchase money thereon the notes of the appellants were included; and although no proof was offered by the appellants as to what these notes were worth at the time of the execution of the waivers, they would be entitled to recover of their trustee the face value thereof with accrued interest due thereon, in the absence of any proof

on behalf of the trustee that they were worth less than par value, it having been shown that their value was completely destroyed by the act of a trustee de son tort. The theory of the bill of complaint for relief in the alternative to the extent of only their proportionate share of the proceeds of the two $20,000 loans, on the idea that Mr. Wilson became a constructive trustee thereof, is not well founded, since it is not shown that he ever received any part of such proceeds.

The suit was filed on June 4, 1935, and within the time required by law for the commencement of a suit against the executors of the estate. Whether the cause of action arose at the time the waivers were executed or at the time the appellants were entitled to receive the notes unimpaired in value at the termination of the trusteeship, which was prior to the maturity of the notes, is immaterial, for the reason that there existed a "trust in regard to the notes and their attendant security not cognizable by the courts of common law," to the enforcement of which the ten-year statute of limitation, Section 2316 of the Code of 1930, applies. Restatement of the Law of Trusts, Section 198, Subsection (e); Calhoun v. Burnett, 40 Miss. 599; Cooper v. Cooper, 61 Miss. 676; Cummings v. Oglesby, 50 Miss. 153; Hook v. Bank of Leland et al., 134 Miss. 185, 98 So. 594. Notwithstanding that the ten-year statute of limitation was held applicable in the Hook's Case, supra, on other grounds, the courts also responded to the contention that the complainant had a remedy at law by saying that Mrs. Hook had only the beneficial or equitable interest in the bank stock involved, the same appearing on the books of the bank in the name of her guardian. Likewise, in the case at bar, the appellants held only the equitable and beneficial interest in the lien of the deed of trust which was waived and the value of which was thereby destroyed, since no formal assignment of such lien, or a proportionate interest therein, had been made to them, as such lien appeared of record in favor of the said Geo. A. Wilson.

From the foregoing views, it follows that the decree of the court below should be reversed and a decree rendered here against the executors of the estate for the face value of the notes in the sum of $30,000 and 6% accrued interest per annum since January 1, 1930.

Reversed and judgment here for the appellants.